UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH J. VALENCINO, III** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-76** |
| **DAVID T. COLE, ET AL** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendants' **Motions in Limine** to exclude the disclosure of insurance limits, to exclude hypothetical questions, and to exclude opinion testimony by lay witnesses (Rec. Doc. 14) are **GRANTED as unopposed**;

**IT IS FURTHER ORDERED** that defendants' **Motion in Limine** to exclude cost projection on speculative future treatment (Rec. Doc. 14) is **DENIED as premature**;

**IT IS FURTHER ORDERED** that plaintiff's *Daubert* **Motion to Strike Testimony of Michael R. Hill, Ph.D.** (Rec. Doc. 16) is **GRANTED in part** and **DENIED in part**. To the extent plaintiff moves to exclude Hill's opinions regarding medical causation, the motion is **GRANTED**. As to Hill's opinions on the biomechanics of the collision, the motion is **DENIED**.

## BACKGROUND

This matter arises out of a motor vehicle accident, in which plaintiff, while waiting at a traffic signal at the intersection of Airline Drive and Clearview Parkway, was struck from behind by an 18-wheeler driven by defendant, David Cole. Plaintiff allegedly suffered injuries to his neck and shoulders. His treating physician is recommending C5-6 and C6-7 anterior discectomy and cervical fusion. Plaintiff has been receiving epidural steroid injections, and as of the time the

instant motions were filed, he had not determined if he would pursue the surgery or continue with a less invasive approach, including steroid injections and medical pain management. Plaintiff retained Stephanie Haupt, a certified rehabilitation counselor and life care planner, to develop a life care plan which includes cost projections for plaintiff's treatment under both scenarios.

## DISCUSSION

**I.    Defendants' Motion in Limine**[1]

Defendants have moved to exclude the annual costs of medications projected in Stephanie Haupt's Life Care Plan, on the grounds that it is speculative because it provides an annual pain medication cost, but does not include life expectancy information necessary to determine how many years of medication would be required. Haupt's report states that an economic analyst is required to make that determination. According to defendants,[2] at his deposition, plaintiff's treating physician declined to estimate future medication use, stating that it should be determined by a pain management specialist. Defendants argue that in the absence of expert testimony on how long the pain medications will be required, the annual costs estimate is purely speculative and should be excluded.

---

[1] Defendants also moved for in limine rulings to exclude the disclosure of insurance limits, to exclude hypothetical questions, and to exclude opinion testimony by lay witnesses, which were unopposed. Accordingly, those portions of defendants' motion are granted as unopposed.

[2] In connection with this assertion in their memorandum, Rec. Doc. 14-1 at p. 2, defendants stated that they would supplement the motion with plaintiff's physician's deposition testimony. Id. at n.10. None of the subsequently submitted deposition excerpts address this point.

Defendants have also moved to exclude any future projected costs of the fusion surgery, because plaintiff has not indicated that he will definitely opt for the surgery, and thus such damages are speculative.

In this case, plaintiff will definitely need one or the other: either ongoing pain medication, or the surgery. At this juncture, it is uncertain which route plaintiff will pursue, nor is it known what the evidence will establish at trial. For instance, while plaintiff's treating physician deferred to a pain management specialist for a definitive opinion on future medications, he may testify at trial that plaintiff will need medications for some minimum period. As for the uncertainty surrounding whether plaintiff will actually have surgery, the court will not penalize the plaintiff for taking a conservative, "wait and see" approach to a very serious surgery. Accordingly, the motion is denied as premature.

## II.     Plaintiff's *Daubert* Motion

Plaintiff has moved to strike the testimony of defendants' biomechanics expert, Michael R. Hill, Ph.D. and to prohibit the use of his report at trial. Hill reached the following conclusions in his report, which defendants seek to present at trial:

> 1. As a result of the contact between the front of the tractor and the rear of the Toyota, the Toyota experienced a forward-directed change in speed (delta-V) of less than 6 miles per hour (mph) and likely 3 mph or lower.
>
> 2. The motion of the Toyota occupant was initially rearward with respect to the vehicle's interior, followed by a subsequent lesser forward rebound motion due to the elastic properties of the seat back and headrest.
>
> 3. The loads that the cervical or lumbar spinal tissues of the occupant of the Toyota would have undergone would be well within levels that these tissues would undergo during routine activities of daily living (ADLs).

> 4. Cervical strain and consequent headaches cannot be ruled out as resulting from the dynamics of this rear accident, while lumbar strains and spinal ligament sprains or other tissue damage or degeneration to the spine would not be consistent with these dynamics.
>
> 5. Mr. Valencino was diagnosed with intervertebral disc (IVD) herniation in the cervical spine. The mechanism for acute spinal disc herniation, in the absence of bony fractures or ligament tears, is combined forced compression and hyperflexion. There would have been no mechanism in the accident to induce meaningful spinal flexion or forced compression to the spine. Therefore, the mechanisms associated with acute IVD herniations were not consistent with resulting from the mechanics of this accident.
>
> 6. There were no mechanisms in the accident that could account for meaningful structural damages to the occupants' cervical, thoracic, or lumbar spine or extremities, or degenerative changes to those anatomic regions. Therefore, exacerbation of any pre-existing tissue damage or degeneration of the spine of the Toyota occupant would not be consistent with the dynamics of this accident.

Plaintiff argues that Hill's testimony is prejudicial, because the jury may confuse him for a neurosurgeon or other medical doctor, and that the bases of Hill's expert report are flawed because he did not examine the vehicle, "calulate[] the plaintiff's spine condition at the time of impact", or do speed calculations. In essence, plaintiff complains that Hill is a biomechanical engineer offering expert medical opinions, which are outside of his expertise. Plaintiff also contends those medical opinions are cumulative of the defendants' IME physician's testimony.

*Applicable Law*

Federal Rule of Evidence 702 provides that for expert testimony to be admissible, "(1) the testimony [must be] based upon sufficient facts or data, (2) ... the product of reliable principles and methods, and (3) the witness [must have] applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. This rule requires the district court to act as

4

a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.

Expert testimony is relevant if it fits the facts of the case and will "assist the trier of fact to understand or determine a fact in issue." Id. at 592. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. Id. at 590. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).

In determining reliability, courts may rely on factors discussed by the *Daubert* court, such as "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." Broussard v. State Farm Fire and Cas. Co., 523 F.3d 618, 630 (5th Cir. 2008). "The factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) Rather, the reliability inquiry must remain flexible because "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. Rushing v. Kansas City S. Ry. Co.,

185 F.3d 496 (5th Cir. 1999), superseded by statute on other grounds, as noted in Mathis v. Exxon Corp., 302 F.3d 448, 459 n.16 (5th Cir. 2002).

*Application to Facts of Case*

Plaintiff does not challenge Hill's credentials as a biomechanical engineer, and the court's review of his curriculum vitae reflects that Hill holds a Ph.D. in bioengineering, has completed continuing education on biomechanics and crash investigation, has published 15 peer-reviewed academic papers, and has been accepted as an expert in numerous trials. Plaintiff's issue related to Hill's qualifications is that while Hill is not a medical doctor, the jury may mistake him for one, and his testimony addresses medical causation. Confusion regarding whether or not Hill is a medical doctor can be easily cleared up on cross-examination, and Hill will not be permitted to testify on medical causation issues beyond his expertise. The court recognizes that depending on how they are presented, the opinions in paragraphs four through six above border on causation opinions. At trial, the court will restrict Hill's testimony to the biomechanics of the collision, including "what injury causation forces are in general" and "how a hypothetical person's body will respond to those forces." Williby v. Nat'l Cas. Co., 2020 WL 6559409, at *2 (E.D. La. Nov. 9, 2020)(internal quotations and citations omitted).

In objecting to Hill's reliability, plaintiff does not challenge Hill on the typical *Daubert* grounds, that is, he does not argue that the technique employed by Hill is not generally accepted, that his theory has not been peer-reviewed, or that it cannot be tested. See Broussard v. State Farm Fire and Cas. Co., 523 F.3d 618, 630 (5th Cir. 2008). Rather, plaintiff contends that in forming his opinion, Hill did not account for certain factors that plaintiff deems essential. This is

a challenge directed to the bases and sources of Hill's opinion. "[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination [and] presentation of contrary evidence ... are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 1078, citing Daubert, 509 U.S. at 596. Accordingly, at trial, plaintiff may cross-examine Hill on his decision not to include certain facts in forming his opinion, and the jury can give it the weight it deserves. The court finds that Hill's testimony should not be excluded on reliability grounds.

With respect to the contention that Hill's testimony is cumulative of the testimony of defendants' IME physician, as noted above, Hill will be testifying within his area of expertise, biomechanical engineering, not on the medical causation issues in this case. Therefore, it is not cumulative. Accordingly,

**IT IS HEREBY ORDERED** that defendants' **Motions in Limine** to exclude the disclosure of insurance limits, to exclude hypothetical questions, and to exclude opinion testimony by lay witnesses (Rec. Doc. 14) are **GRANTED as unopposed**;

**IT IS FURTHER ORDERED** that defendants' **Motion in Limine** to exclude cost projection on speculative future treatment (Rec. Doc. 14) is **DENIED as premature**;

**IT IS FURTHER ORDERED** that plaintiff's *Daubert* **Motion to Strike Testimony of Michael R. Hill, Ph.D.** (Rec. Doc. 16) is **GRANTED in part** and **DENIED in part**. To the

extent plaintiff moves to exclude Hill's opinions regarding medical causation, the motion is **GRANTED**. As to Hill's opinions on the biomechanics of the collision, the motion is **DENIED**.

New Orleans, Louisiana, this   15th  day of April, 2021.

_____
         **MARY ANN VIAL LEMMON**
      **UNITED STATES DISTRICT JUDGE**